COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| ARTHUR LOUIS FOLEY, JR., | § | No. 08-13-00039-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | |
| | § | Criminal District Court Number Three |
| THE STATE OF TEXAS, | § | |
| Appellee. | § | of Tarrant County, Texas |
| | § | (TC# 1302886R) |
| | § | |

**O P I N I O N[1]**

Appellant Arthur Louis Foley, Jr., was indicted on one count of murder for killing Brandon Sibley. The State alleged three alternative means of commission in the indictment. *See* TEX. PENAL CODE ANN. § 19.02(b)(1)-(3) (West 2011) Under section 19.02(b)(3), felony-murder, the State alleged the underlying felony was unlawful possession of firearm, and the trial court's charge included an instruction on possession by a convicted felon. The charge also included a self-defense and defense of a third person instruction. On November 19, 2012, Appellant was found guilty and the following day sentenced to 25 years in the Institutional Division of the Texas Department of Criminal Justice. On appeal, in three issues, Appellant challenges the trial court's

---

[1] This case was transferred to this Court from the Second Court of Appeals pursuant to an order issued by the Supreme Court of Texas. *See* TEX.GOV'T CODE ANN. § 73.001 (West 2013).

(1) allowing the State to impeach him with a conviction that was older than ten years; (2) admitting incomplete and unreliable criminal records of the 1987 conviction to impeach him; and (3) failing to declare a mistrial *sua sponte* when defense counsel should have requested a mistrial but did not. We affirm.

## FACTUAL HISTORY

On May 23, 2011, Sibley, a former employee of Appellant's, went to Appellant's auto repair shop to pick up speaker-boxes he left there. Appellant and his employee, Davis, told Sibley the speakers had been stolen during a burglary of the shop and he would be paid for the speakers once the insurance claim was settled. Sibley disputed Appellant's claim of a burglary and demanded to be paid for the speakers. Sibley drove away angry.

Later that day, Sibley returned and again demanded the return of his speakers. Miracle,[2] Appellant's sister, and Sibley began to fight and she swung a stick at Sibley. Appellant testified that, believing his sister could be killed, he shot Sibley. Appellant claimed he also shot Sibley in self-defense. Appellant stated Sibley was yelling, "I'll kill all of y'all."

Plumber Greg Bogan, sitting in a van parked down the street, heard Miracle and Sibley arguing and saw her swing a stick at Sibley. Bogan observed Miracle go inside the shop. Bogan stated Appellant came outside the shop, walked toward Sibley and shot him once. Sibley ran to Bogan's van and fell inside the open door. Bogan called 9-1-1 as Appellant walked calmly back into the shop. Everyone at the shop left quickly. Sibley stopped breathing shortly after police officers arrived.

Appellant said he shot Sibley with a .9-millimeter gun that rolled out from Sibley's pant leg. According to Appellant he picked up the gun and shot Sibley as Sibley came toward him.

---

[2] Miracle had stopped by after a chemotherapy treatment and was deceased at the time of trial.

2

Appellant maintained the gun was not his, but that Sibley had brought it to the shop.   Appellant denied owning a gun despite the fact that ammunition for the .9-millimeter gun was found in his office.   He admitted to buying the ammunition in anticipation of eventually purchasing a .9-millimeter handgun.   Appellant stated he intended to purchase a .9-millimeter gun under his wife's name if his prior felony conviction prevented him from obtaining one in his name.

A search of Appellant's auto shop revealed a Hi-Point .9-millimeter handgun from the workbench in the garage area.   A .9-millimeter bullet casing had been collected from Appellant's shop parking lot.   Testing of the Hi-Point .9-millimeter handgun concluded the .9-millimeter casing found in the parking lot came from the Hi-Point handgun found in the shop.

A former customer of Appellant's, Bloomer, testified he had hidden a Hi-Point .9-millimetter handgun in the trunk of a vehicle he had left there in 2011.   Later, he returned for his vehicle and Appellant told him it was gone.   Bloomer never recovered the Hi-Point .9 millimeter hand gun from his vehicle.   Sibley's father stated he saw Appellant sitting at his desk with a black semi-automatic weapon about a week to two weeks before his son's death.

## PROCEDURAL HISTORY

The trial court admitted portions of Appellant's criminal records from the Louisiana Department of Public Safety and Corrections as State's Exhibit 62A without objection from Appellant.   State's Exhibit 62A contains an indictment out of the "Criminal District Court for the Parish of Orleans" that states: "**MIKE FORD aka ARTHUR FOLEY**" committed theft of an automobile valued at five hundred dollars or more.   The records also include a "WAIVER OF CONSTITUTIONAL RIGHTS PLEA OF GUILTY" which is signed by Arthur Foley and his attorney.   The Waiver also recites "State of Louisiana versus **Mike Ford aka Arthur Foley**."   It

3

further indicates that Appellant pled guilty to theft over $500. The sentencing document reflects on 9-11-1996 in the case of State of Louisiana v. **Mike Ford** that "[t]he above defendant… tendered to the Court a plea of guilty as charged" in which the sentence is "Three (3) years in the department of corrections – Suspended Two (2) years active probation $541.00 restitution."

Appellant elected to testify in the guilt-innocence phase of the trial. During direct examination he stated:

> I had every intention of buying a handgun. I went to the pawnshop. I looked at some guns. I was going to buy a Ruger 9-millimeter. I filled out the paperwork. He told me it would take two days. I told him I had a prior in New Orleans maybe 18 – 17, 18 years ago. He say he would run the police report, and I come back Tuesday, he will let me know.

> On cross-examination the following colloquy followed:

> STATE: Mr. Foley, you told Detective Carroll, I don't think I can get a gun, didn't you?

> APPELLANT: Yes, sir. You're right.

> STATE: There's only one reason you would have told him that, right?

> APPELLANT: Yes, sir.

> STATE: What's that reason?

> APPELLANT: Because I had committed a crime in New Orleans and I – I was on probation for it. I had got three years – three-year sentence, two years probation, which I completed. I was supposed to be adjudicated. So I – I actually thought I could have owned a gun. But I know nothing about Texas law, so I would have had to do research.

> STATE: Right. When you committed auto theft in Louisiana, you didn't know about what the law for firearms would be in Texas, did you?

> APPELLANT: Exactly.

> …

> STATE: Auto theft in Louisiana when you were convicted was a felony offense.

4

APPELLANT: It was an offense, I was convicted of it.

STATE: You can't – you can't buy a gun because you're a convicted felon.

…

STATE: That's why you can't buy a gun because you're a convicted felon. That's why you told that to Detective Carroll.

APPELLANT: I – I guess you could say that. I—I wasn't sure. I would have had to do research on it.

STATE: By the way, who's Mike Ford and why were you using his name?

APPELLANT: I wasn't using his name. When I first got arrested on that, apparently somebody was using my name. And that person turned out to be Mike Ford. And it was a huge thing trying to separate the two. And it – it actually stuck with me to life. You can identify me as Arthur Foley, but when I was arrested in – in – however that Mike Ford stuff got in there, it—it never physically got off.

…

STATE: Was that the only felony probation that you've ever been on?

APPELLANT: Yes, sir.

Defense counsel then objected that Appellant's "other offenses are extraneous offenses. I should have objected to the question[.]" The State asserted that Appellant had denied his other felony conviction which opened the door to his prior burglary conviction from the 80s.

The trial court held a hearing outside of the jury's presence. The State asked Appellant if he had been placed on probation for burglary on September 2, 1987. He responded, "Not that I recall, no." State's Exhibit 62B is a two-page document that appears to be a "rap sheet" according to the trial court. State's Exhibit 62B is a State of Louisiana Investigative Report for Arthur L. Foley. The report also lists aliases of Mike Ford, Michael Foley, Mike Folay and Arthur L. Foley, Jr. The original rap sheet contains eleven (11) arrests, nine (9) of which reflect the name of

5

Arthur Foley and two (2) for Mike Ford. Only two convictions are recorded, one in the name of Arthur L. Foley, Jr. which is the auto theft conviction Appellant admitted to and the second, a conviction for simple burglary on September 2, 1987 in the name of Arthur L. Foley. Appellant agreed with the State that his Louisiana criminal record history correctly recited his full name, social security number, gender, race and date of birth. Appellant contended his criminal history was not his but Mike Ford's with the lone exception of the auto theft conviction.

Appellant objected that proof of the second felony probation was not relevant and was an extraneous offense. Further, Appellant argued the State did not have any information to link Appellant to the other offenses in Appellant's criminal history from Louisiana. The State countered the packet sent by the State of Louisiana which included Appellant's criminal history and alias was certified as "true copies of the records of the Louisiana Department of Public Safety and Corrections regarding Arthur Foley." Additionally the State pointed out that Appellant had admitted to veracity of the documents in the packet pertaining to the auto theft. The State also reminded the trial court that the Appellant had stipulated to evidence from a fingerprint expert that the fingerprints in the Louisiana criminal record packet were his. The trial court ruled the State could cross-examine Appellant regarding any felony convictions or crimes of moral turpitude. The State urged the admission of Appellant's Louisiana criminal history record reflecting the felony conviction of burglary from September 2, 1987. The State proposed Appellant's criminal history be admitted only if Appellant denied the conviction for burglary.

Appellant objected to cross-examination by the State of the burglary conviction on the basis that (1) it was not relevant; (2) it was an extraneous; (3) there was no proof of a felony conviction; and (4) it was hearsay and a rap sheet was not a legitimate document. Appellant also

6

objected that the State could not link him to the offense, he could not cross examine the document, that the conviction was too remote, and it was more prejudicial than probative. The trial court responded, "I've looked at the dates and it appears to be within ten years." The trial court noted the State had no judgment or court documents to support the admission of the burglary conviction. The State responded the criminal history was included in Arthur Foley's certified records from Louisiana and equivalent to a Texas pen packet. The trial court ruled that the State could cross-examine Appellant on his prior burglary conviction of September 2, 1987. Appellant requested a limiting instruction be given to the jury during the cross-examination and in the jury charge.

The jury then returned to the courtroom at 10:52 a.m. and was given the following instruction:

> Ladies and gentlemen of the jury, you are instructed that any prior conviction that is alleged or proven on cross-examination, you are to consider it for credibility purposes only of the witness and cannot use it to – in the case-in-chief for guilt or innocence on the crime he's charged with. But you can consider it for credibility purposes only.

The State then asked Appellant if he had another felony conviction. He responded no. Appellant denied he had ever been convicted on September 2, 1987 for burglary in Baton Rouge, Louisiana and that he had been placed on probation for two years.

Immediately prior to closing argument at 1:27 p.m., the trial court admitted State's Exhibit 62B and allowed the State to read it to the jury. The trial court redacted the rap sheet to reflect only the arrest for burglary and conviction on September 2, 1987. The rap sheet information is as follows:

ARREST DATE: 09/02/1987          LID:
AGENCY: DOC BATON ROUGE LA      AFIS ATN:

7

NAME: FOLEY, ARTHUR L

CHARGE 1                                        COUNTS 1
R.S. 14:62 SIMPLE BURGLARY
DISPOSITION: EBR#1-87-396, ON PROB FOR ARREST OF 11-18-87, PG 7-8-87
9-2-87 SENT TO 2 YRS DOC, SUSP & 2 YRS ACT SUPV PROB PROB BEGINS 9-2-87
ENDS 9-2-89 7-9-90 PROB TERMINATED UNSATIS[.][3]

Appellant objected to State's Exhibit 62B on the basis that it was not a court record or was

a judgment, was not sufficiently tied to the Appellant, and was hearsay.   Further, he contended the

admission of Exhibit 62B denies him the right to confront or cross-examine, it is not authenticated

and is more prejudicial than probative.

The trial court inserted the following instruction in the jury charge:

You are instructed that if there is any testimony before you in this case regarding
the defendant having committed offenses other than the offense alleged against him
in the indictment in this case, you cannot consider said testimony for any purpose
unless you find and believe beyond a reasonable doubt that the defendant
committed such other offenses, if any were committed, and even then you may only
consider the same in determining the credibility of the defendant, and for no other
purpose.

**DISCUSSION**

On appeal, Appellant complains that the court abused its discretion in (1) allowing the

State to impeach Appellant with a conviction older than ten (10) years; and (2) allowing the State

to impeach Appellant with incomplete prejudicial records that were not reliable.   Appellant's

third complaint is the trial court erred by failing to declare a mistrial *sua sponte* when defense

counsel should have requested a mistrial but did not.

**Standard of Review**

The decision to admit or exclude evidence is a matter within the trial court's sound

_____

[3] Appellant's conviction for theft over $500 on the Louisiana Report recounts the arrest date as 9/11/1996 which is also the disposition date.   This arrest and conviction follow the same pattern of his admitted felony conviction in which it appears the arrest date is the sentencing date.

8

discretion. *See Coffin v. State*, 885 S.W.2d 140, 149 (Tex.Crim.App. 1994); *Dillard v. State*, 931 S.W.2d 689, 698 (Tex.App.—Dallas 1996, pet. ref'd). "[A] trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse-of-discretion standard." *Devoe v. State,* 354 S.W.3d 457, 469 (Tex.Crim.App. 2011); *Theus v. State,* 845 S.W.2d 874, 881 (Tex.Crim.App. 1992). A trial court abuses its discretion if it acts without reference to guiding rules and principles, or acts arbitrarily and unreasonably. *Montgomery v. State,* 810 S.W.2d 372, 390 (Tex.Crim.App. 1990) (op. on reh'g). We may not disturb the trial court's ruling if it is within the zone of reasonable disagreement. *Schmidt v. State*, 373 S.W.3d 856, 862 (Tex.App.—Amarillo 2012, pet. ref'd). It naturally follows that this standard applies to both Rules 404(b) and 403 rulings. *Montgomery*, 810 S.W.2d at 391. Appeals courts uphold the decisions of trial courts if any legal basis exists for doing so, even where the trial court expressly relied on an incorrect basis. *State v. Ross,* 32 S.W.3d 853, 856 (Tex.Crim.App. 2000).

### Impeachment with Prior Conviction

Rule 609(a) of the Texas Rules of Evidence allows impeachment of a witness by admission of evidence of a prior conviction if the prior conviction was a felony or a crime of moral turpitude and the trial court determines that the probative value outweighs the prejudicial effect. TEX. R. EVID. 609(a). However, Rule 609(b) provides the conviction is not admissible if more than ten years has elapsed since the date of the conviction unless the trial court determines, in the interests of justice, the probative value of the conviction supported by specific facts and circumstances substantially outweighs the prejudicial effect. TEX. R. EVID. 609(b).

Appellant contends that the 1987 burglary conviction violates Rule 609(b), that the trial judge did not conduct the requisite balancing test pursuant to the rule on or off the record, and that

9

the court erred in ruling the conviction "appears to be within ten years." The State tacitly concedes the conviction is over ten years old and argues that Rule 609(b) applies. Relying on *Chitwood*, the State responds that the trial court's application of the Rule 609 balancing test "need not be overt" nor does it need to "expressly inform the parties that it undertook the balancing test, describe the factors it weighed, and issue a finding disclosing whether those circumstances favored either the inclusion or exclusion of the evidence." *Chitwood v. State,* 350 S.W.3d 746, 749 (Tex.App.—Amarillo 2011, no pet.) (citing *Bryant v. State,* 997 S.W.2d 673, 676 (Tex.App.—Texarkana 1999, no pet.)). In addition, the appellate courts are to presume the test was performed. *Id.* The State also argues the trial court's ruling must be upheld under *Bowley* if it is "correct under any theory of law applicable to the case … even if the trial judge failed to give any reason or used the wrong reason for the ruling." *Bowley v. State,* 310 S.W.3d 431, 434 (Tex.Crim.App. 2010).

The defendant places "his character for veracity … in issue by merely taking the stand, and thus he may be impeached in the same manner as any other witness." *Hammett v. State,* 713 S.W.2d 102, 105 (Tex.Crim.App. 1986). An exception to Rule 609 arises when the defendant "opens the door" to previously inadmissible evidence. *Delk v. State,* 855 S.W.2d 700, 704 (Tex.Crim.App. 1993); *Ochoa v. State,* 481 S.W.2d 847, 850 (Tex.Crim.App. 1972). The exception applies when a witness testifies regarding his past conduct and leaves the false impression regarding his law-abiding behavior. *Delk*, 855 S.W.2d at 704. When a witness creates a false impression as to the extent of his prior arrests, convictions, charges or trouble with the police, he "opens the door" to his criminal history. *Id.*; *Prescott v. State,* 744 S.W.2d 128, 131 (Tex.Crim.App. 1988). If a defendant testifies as to some of his convictions but leaves the

impression that there are no others, "the State may refute such testimony despite the nature of the conviction used or its remoteness." *Ochoa* 481 S.W.2d at 850. If a defendant testifies to only selective details of his prior arrests and convictions, his failure to disclose any other instances leaves the impression with the jury that those instances he has testified about are the extent of his prior criminal history. *Reese v. State,* 531 S.W.2d 638, 640-41 (Tex.Crim.App. 1976). If a witness portrays a false impression with respect to his prior criminal history, cross-examination is not limited to his own assertions on direct examination. *Ex parte Carter*, 621 S.W.2d 786, 788 (Tex.Crim.App. 1981).

Generally, the false-impression exception does not permit opposing counsel to rely on his cross-examination to contradict the witness and admit evidence of extraneous offenses that would otherwise be inadmissible. *Wheeler v. State,* 67 S.W.3d 879, 885 (Tex.Crim.App. 2002); *Shipman v. State*, 604 S.W.2d 182, 184-85 (Tex.Crim.App. 1980). Additionally, the witness must unambiguously create the false impression, thereby permitting the admission of evidence of his past criminal history. *Delk,* 855 S.W.2d at 704-05; *Hernandez v. State,* 351 S.W.3d 156, 159 (Tex.App.—Texarkana 2011, pet. ref'd). However, when a defendant voluntarily testifies on cross-examination concerning his prior criminal record, without any prompting or maneuvering on the part of the State, and in doing so leaves a false impression with the jury, the State is allowed to correct that false impression by introducing evidence of the defendant's prior criminal record. *Winegarner v. State,* 235 S.W.3d 787, 790 (Tex.Crim.App. 2007); *Martinez v. State,* 728 S.W.2d 360, 362 (Tex.Crim.App. 1987); *Roberts v. State,* 29 S.W.3d 596, 601 (Tex.App.—Houston [1st Dist.] 2000, pet. ref'd).

Assuming without deciding the trial court did not conduct the Rule 609(b) balancing test,

11

the record allows for an alternative basis of admission of the 1987 burglary conviction. Appellant testified at trial during direct examination that he had "**a prior** in New Orleans maybe 18 – 17, 18 years ago." Under cross-examination he reiterated that he could not purchase a gun because "I had committed **a crime** in New Orleans and I – I was on probation for it." Appellant's defense was Sibley had come to his shop with the gun, it had rolled out from Sibley's pant leg and Appellant had killed Sibley in defense of his sister and himself. Inherent in that defense was his assertion he did not possess or own a gun because of his prior felony conviction in Louisiana. Appellant left a false impression with the jury that he had "a prior" and "committed a crime." The State properly presented evidence that contradicted Appellant's misleading assertion he had one prior conviction and committed one crime in Louisiana.

If the trial judge applied the Rule 609(b) balancing test, Appellant carries the burden to show how the trial court abused its discretion. While Appellant correctly states the rule encapsulated within Rule 609(b), he did not attempt to apply it to the case at hand. Therefore, Appellant failed to show the trial court erred in conducting the Rule 609(b) balancing test. *Chitwood*, 350 S.W.3d at 749.

Issue One is overruled.

### Impeachment Evidence

Appellant's second issue complains the evidence of the 1987 burglary conviction was insufficient, unreliable and could not be proven beyond a reasonable doubt citing *Paschall, Flowers* and *Blank*. *Paschall v. State,* 285 S.W.3d 166 (Tex.App.—Fort Worth 2009, pet. ref'd); *Flowers v. State,* 220 S.W.3d 919 (Tex.Crim.App. 2007); *Blank v. State,* 172 S.W.3d 673 (Tex.App.—San Antonio 2005, no pet.) (op. on reh'g). He complains State's Exhibit 62B is

12

unreliable because it does not contain the identifying information of the court that entered the judgment; lacks a cause number; does not state what occurred as a result of the probation ending unsuccessfully; and does not contain complete sentences. Lastly, Appellant argues the evidence should have been excluded under Rule 609(a) because the probative value does not outweigh the prejudicial effect. The State responds the trial court did not abuse its discretion in admitting State's Exhibit 62B because the existence of the felony conviction was proved and sufficiently linked Appellant to the conviction.

Appellant's reliance on *Paschall*, *Flowers* and *Blank* is misplaced. Each of these cases involved the proof of a prior conviction for enhancement and jurisdictional purposes which must be proved beyond a reasonable doubt. In *Paschall*, the defendant was charged with a felony DWI in which two prior convictions were used to enhance a subsequent DWI. *Paschall*, 285 S.W.3d at 168. *Flowers* and *Blank* are similar, both defendants were charged with a DWI enhanced with one prior conviction. *Flowers*, 220 S.W.3d at 920; *Blank*, 172 S.W.3d at 674.

As best as we can surmise, the thrust of Appellant's argument on appeal is the 1987 burglary conviction is not properly authenticated nor sufficiently linked to the defendant. After a careful and through examination of Appellant's certified records from the Louisiana Department of Public Safety and Corrections, it is clear these records were self-authenticating pursuant to rule 902(4). TEX. R. EVID. 902(4). The trial court redacted all of Appellant's criminal history save the 1987 burglary conviction. The redacted criminal history record correctly identified his name, his race, his gender, his date of birth, and social security number. The complained of burglary conviction was listed under his name. The record shows the trial court did not abuse its discretion in admitting State's Exhibit 62B.

13

Here, Appellant was impeached with the admission of evidence of a 1987 burglary conviction. The 1987 burglary conviction was not used to enhance his conviction nor was it necessary for jurisdictional purposes. The evidence of the 1987 burglary conviction was admitted solely to impeach the credibility of the Appellant and the jury was given a limiting instruction by the trial court during cross-examination and was included in the charge. Moreover, Appellant was given ample opportunity to deny the 1987 burglary conviction and explain how the name Mike Ford appeared in his Louisiana criminal history.

We have found the prior 1987 burglary conviction was properly admitted. As discussed earlier the admission and exclusion of evidence is reviewed upon the abuse of discretion standard and will be upheld if the trial court's decision is correct under any theory of law applicable to the case. *Montgomery*, 810 S.W.2d at 391. Likewise we find the records contained in State's Exhibit 62B were self-authenticated and sufficiently linked to Appellant.

We overrule Issue Two.

**Mistrial**

In Issue Three, Appellant asserts that his attorney erred in failing to request a mistrial and the judge erred in not declaring a mistrial *sua sponte* when the State asked Appellant if he was being investigated by the Texas Department of Insurance. On cross-examination, the prosecutor asked Appellant if the reason Sibley doubted Appellant's claim of a burglary was because "you're being investigated … by the Texas Department of Insurance." Defense counsel immediately objected, but did not request a mistrial. The State argued that the question went to the relationship between Sibley and Appellant. The judge admonished the prosecutor not to go into it any further. The judge instructed the jury to disregard the question. Appellant asserts that the court erred in

14

not declaring a mistrial.

A party complaining of the trial court's failure to grant a mistrial preserves error by: "(1) object[ing] in a timely manner[;] (2) request[ing] an instruction to disregard[;] and (3) mov[ing] for mistrial…" *Cruz v. State*, 225 S.W.3d 546, 548 (Tex.Crim.App. 2007). An essential requirement to preserve this error for appellate review is the party must make a specific, timely motion for a mistrial that is refused by the trial court. *Id.* Appellant has failed to preserve his complaint for appellate review by not moving for a mistrial. *Id*.

Historically, appellate courts have given great deference to the trial court in *sua sponte* granting a mistrial based on manifest necessity or alternatively determining if an instruction to disregard is sufficient to remediate any juror bias. *Pierson v. State*, 426 S.W.3d 763, 773 (Tex.Crim.App. 2014). Appellant has failed to cite to any case in which these facts support a finding of manifest necessity by the trial court mandating a mistrial.

Issue Three is overruled.

## CONCLUSION

We find no reversible error in the case. The judgment is affirmed.


YVONNE T. RODRIGUEZ, Justice

July 29, 2015

Before McClure, C.J., Rivera, and Rodriguez, JJ.
Rivera, J., not participating

(Do Not Publish)